**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-08-982-PHX-NVW (MHB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Melquin Melendes-Canacas, | |
| Defendant. | |

This case arises on counsel for Defendant Melquin Melendes-Canacas' Motion Re: Payment of Mental Health Expert, filed on November 17, 2009. (docket # 64) The Motion requests the Court determine which agency should pay Dr. Marc Walter's expert fees in the amount of $2,250.00 for his second evaluation of Defendant because "[b]oth the U.S. Attorney's office and the CJA panel office have refused to pay Dr. Walter's bill stating that it is the other agency's responsibility." (*Id.*) Payment of Defendant's mental health expert's fees falls within the scope of the referral to the undersigned Magistrate Judge by the assigned District Judge, the Hon. Neil V. Wake. (docket # 48) The Court concludes that $1,600.00 of Dr. Walter's expert fees should be paid out of the CJA funds and the $650.00 balance be submitted to the Chief Judge of the Ninth Circuit, or his delegate, for approval.

### BACKGROUND

On June 23, 2008, Defendant, an illegal alien, was arrested by the Phoenix Police Department on local charges. Defendant was ultimately indicted by a federal grand

jury on one count of Reentry After Deportation, a class C felony, in violation of 8 U.S.C. § 1326(a) and enhanced by § 1326(b)(2). (docket ## 1, 26) On July 8, 2009, CJA panel attorney, Michael S. Reeves, was appointed to represent Defendant based upon a magistrate judge's finding that Defendant was financially unable to obtain adequate representation. (docket # 2) Because reasonable cause existed that Defendant was "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to properly assist in his defense," defense counsel filed a Motion to Determine Competency, requesting Phoenix psychologist, Marc S. Walter, PhD, ABPP-CN, be appointed to evaluate and opine on Defendant's competency to proceed. (docket # 17) Over the Government's objection without explanation, the Court appointed Dr. Walter and ordered his "bill for this evaluation and report [be sent] directly to the Department of Justice, c/o United States Attorney, Two Renaissance Square, 40 North Central Avenue, Suite 1200, Phoenix, AZ 85004-4408."[1] (docket # 25 at 3) The Court believes this bill was paid.

After Dr. Walter found Defendant not competent to stand trial in his October 3, 2008 sealed report, docket # 30, the undersigned granted defense counsel's oral motion that Defendant be hospitalized by the Bureau of Prisons ("BOP") and receive treatment to restore him to competency. (docket # 31) Subsequently, the Federal Medical Center's staff psychologist and psychiatrist in Butner, North Carolina, opined that Defendant "is suffering from a mental disease or defect rendering him mentally incompetent" but with additional treatment and hospitalization Defendant's "competency to stand trial may be restored." (docket # 35 at 1) The BOP's Forensic Evaluation requested "an additional period of hospitalization and treatment to restore [Defendant's] competency to stand trial, pursuant to

---

[1] The Department of Justice and the United States Attorney's Office take the position that impartial examinations to determine competency to stand trial under 18 U.S.C. § 4241 will be paid by the DOJ regardless of which party requests the examination. However, when a second examination is conducted to dispute or confirm the findings of the original examination, the expense should be paid by the party requesting the second examination.

the provisions of Title 18, United States Code, Section 4241 (d)." (*Id.* at 16) There were no objections to BOP's request and it was granted. (docket # 37)

In its July 22, 2009 Forensic Evaluation, the BOP's staff psychologist concluded:

> it is our opinion Mr. Melendes-Canacas *is presently competent to stand trial despite his [mental illness].* While we concur with the previous evaluations that indicate Mr. Melendes-Cancacas may have some genuine cognitive deficits that limit his ability to comprehend complex or abstract material effectively and process verbal information quickly, he has demonstrated an ability to learn verbal material such as legal concepts and information when such material is presented to him repetitively or is expressed in simple language. Further, he has also demonstrated a tendency to present as though he does not understand concepts, when in fact he does understand them.

(docket # 45 at 14) (emphasis added).

Disagreeing with BOP's findings and conclusions, defense counsel requested a mental competency hearing and an evaluation be performed by "a local forensic doctor" of Defendant's choosing, Dr. Walter. (docket # 46)  Defense counsel, an experienced attorney and long-time CJA panel member, did not file this motion *ex-parte*,[2] and did not estimate the cost for (1) Dr. Walter's review of Defendant's records while hospitalized at BOP's medical facility, (2) Dr. Walter's second mental health evaluation, or (3) Dr. Walter's written report detailing his conclusions and supporting rationale, or (4) identify the payment source for his request.

The Court found that the appointment was necessary to the defense and good cause existed to reappoint Dr. Walter because of his familiarity with Defendant despite the passage of nearly a year since his examination of Defendant and the intervening medical and restorative efforts by BOP to return Defendant to competency. The Court granted

---

[2] Title 18 U.S.C. § 3006A(e)(1) authorizes, but does not require, that such a motion "[be] request[ed] . . . in an ex parte application." 18 U.S.C. § 3006A(e)(1). "Although the Criminal Justice Act of 1964 has been amended several times, [§ 3006A(e)] was included in the original act . . . The legislative history of the Act indicates that this section provided for an ex parte proceeding to 'prevent [ ] the possibility that an open hearing may cause a defendant to reveal his defense.'" *United States v. Gonzales*, 150 F.3d 1246, 1258 n. 16 (10th Cir. 1998) (citation omitted), *cert. denied*, 525 U.S. 1129 (1999).

Defendant's Request for Hearing Re: Mental Health Issues, docket #46, and appointed Dr. Walter "to perform a follow-up mental competency examination upon Defendant; review BOP's sealed Forensic Evaluation, dated July 13, 2009, of Defendant, docket # 45; *assist defense counsel in this regard*; and, if appropriate, provide a report to the Court regarding Defendant's current ability to understand the proceedings against him and *assist counsel in the preparation of Defendant's defense*." (docket # 53) (emphasis added). Dr. Walter was solely a defense expert witness that both counsel and the Court anticipated would testify for Defendant at the upcoming contested competency hearing. Because this type of appointment is usually made by a district judge and defense counsel provided no input on the CJA's $1,600.00 limitation on an expert witness' fees, the undersigned ordered *sua sponte* that Dr. Walter's fees not "exceed $2,500.00 for services rendered." Ultimately, Dr. Walter's bill for this assignment was $2,250.00. (docket # 63)

Shortly after Dr. Walter filed, under seal, his second evaluation, finding Defendant "not competent to stand trial due to [his particular] mental disorder," docket # 58, the Government voluntarily dismissed the case without prejudice "because a dismissal in this case will best advance the interests of justice." (docket ## 61, 62) Although the case was assigned to District Judge Wake who granted the uncontested dismissal motion, the undersigned Magistrate Judge essentially presided over all proceedings before dismissal of this case. See, 18 U.S.C. § 3006A(d)(5) ("[I]n cases where representation is furnished exclusively before a United States magistrate judge, the claim shall be submitted to him and he shall fix the compensation and reimbursement to be paid. . . ."). Defendant has been returned to his country of origin by immigration officials.

## THE CRIMINAL JUSTICE ACT

The Criminal Justice Act ("CJA") provides that courts may "furnish[] representation for any person financially unable to obtain adequate representation." 18 U.S.C. § 3006A(a). "Representation . . . shall include counsel and investigative, expert, and other services necessary for adequate representation." *Id*. Like the presumptive cap set for a CJA attorney's maximum hourly rate ($110.00 per hour) and maximum payment per

felony case ($8,600.00), the statute sets a maximum of $1,600.00 for services other than counsel,

> exclusive of reimbursement for expenses reasonably incurred, unless payment in excess of that limit is certified by . . . the United States magistrate judge if the services were rendered in connection with a case disposed of entirely before him, as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit.

Title 18 U.S.C. § 3006A(e)(3). Thus, because defense counsel's request exceeded the $1,600.00 statutory maximum for a court-appointed counsel's expert in a felony case, the district court must certify to the Chief Judge of the Ninth Circuit, or his delegate, for approval of the amount of excess payment ($650.00) as necessary to provide fair compensation.

The Ninth Circuit recently recognized that "our circuit has very little precedent regarding the CJA compensation system." *In the Matter of Gerald R. Smith*, ___ F.3d ___, 2009 WL 3739298, * 4 (9th Cir. November 10, 2009). This is especially true for compensating an expert witness retained by counsel appointed pursuant to the CJA. Other courts, however, have indicated that "[t]he decision to grant or deny a motion for expert services pursuant to 18 U.S.C. § 3006A(e) is committed to the sound discretion of the district court and may only be overturned upon a showing of abuse of discretion." *United States v. Lantz*, 2009 WL 1158818, * 1 (S.D.Ohio 2009) (citing *United States v. Rinchack*, 820 F.2d 1557, 1563 (11th Cir. 1987) ("It is well established that the expert services provided for in Section 3000A(e) include the assistance of a psychiatrist in cases where competency or insanity is an issue.") (citations omitted). "Under Section 3006A(e), counsel for a defendant financially unable to obtain expert services for adequate representation may apply to the court for the needed funds. If the court finds that the services are necessary and that the defendant is financially unable to obtain them, the court may authorize counsel to obtain the services." *Id.* (citing 18 U.S.C. § 3006A(e)(1)). Also see, *United States v. Chase*, 499 F.3d 1061, 1065 (9th Cir. 2007); *United States v. Harp*, 282 Fed. Appx. 774, 776 (11th Cir. 2008). The burden, however, is on the defendant to show the services are necessary. *United States*

1  *v. Valtierra*, 467 F.2d 125, 126 (9th Cir. 1972). Thus, a district court may authorize funds for

2  an expert witness when the defendant successfully makes a showing that 1) he is financially

3  unable to provide the services, and 2) the services of the psychological expert are "necessary

4  for an adequate defense." 18 U.S.C. § 3006A(e). "[M]agistrate judges and district judges

5  have the discretion to rule on these applications to determine if the experts' services are

6  necessary." *United States v. Bloomer*, 150 F.3d 146, 148 (2nd Cir. 1998) (citing 18 U.S.C. §

7  3006A(e)(1)).

8        "The Judicial Conference of the United States has approved official guidelines

9  for the administration of the CJA and related statutes. These guidelines counsel judges and

10  attorneys on compliance with the CJA, and include as appendices forms to aid in the

11  submission of claims." *Smith*, 2009 WL 3739298 at * 3 (citing the Guidelines for the Admin.

12  of the Criminal Justice Act in a case dealing with a request for payment of excessive

13  attorney's fees). These Guidelines also provide a framework for determining claims for

14  expenses for psychiatrists and psychologists. See, Guidelines, ¶ 3.11. Specifically, section

15  3.11(B) provides that "CJA funds are used to pay for psychiatric and related services

16  obtained in accordance with subsection (e) of the CJA upon a determination that the services

17  are 'necessary for an adequate defense.'" Subsection C confirms "[t]he limitations of $1,600

18  and $500 contained in paragraph 3.02 of this chapter apply to compensation claims submitted

19  by 'defense' psychiatrists and related experts, to be paid out of the CJA appropriation."

20  Guidelines, ¶ 3.11(C).

21  **<u>DISCUSSION</u>**

22        Defendant's mental capacity was critical to whether the Government could

23  continue with its felony prosecution against Defendant. If found competent at the contested

24  competency hearing, Defendant's mental health may have also been either a defense at trial

25  or, if Defendant were convicted, an issue for mitigation at sentencing. The Court finds the

26  $2,250.00 fee charged by Dr. Walter for re-interviewing Defendant through a Spanish-

27  speaking interpreter; conducting a comprehensive psychological evaluation of Defendant;

28  reviewing Defendant's BOP medical records, two BOP forensic evaluations and test data;

administrating the "Comprehensive to Stand Trial Assessment Instrument," docket # 58 at 2; and preparing a written report were reasonably incurred and "necessary to provide fair compensation for services of an unusual character or duration." 18 U.S.C. § 3006A(e)(3).

Defense counsel's Request for Hearing Re: Mental Health Issues, docket #46, could, and should, have informed the undersigned of the CJA presumptive cap of $1,600.00 and set forth why the Court should authorize Dr. Walter's fees in excess of the statutory maximum. In fact, the Guidelines encourage that "[i]f it can be anticipated that the compensation will exceed the statutory maximum, advance approval should be obtained from the court and the chief judge of the circuit . . . ." Guidelines, ¶ 3.02(A). This was not done in this case. Nevertheless, had defense counsel done so, it is likely this Magistrate Judge would have authorized Dr. Walter's fees for the reasons stated herein, subject, of course, to the certification to, and approval of, the Chief Judge of the Ninth Circuit or his delegate for the additional $650.00. Moreover, approval of such an expert and capping his fees in advance of the expert's services at $2,500.00 is not unprecedented. See, *United States v. Vead*, 2005 WL 1025798, * 3-4 (N.D.Tex. 2005).

For the reasons set forth herein,

**IT IS ORDERED** that Defendant Melquin Melendes-Canacas' Motion Re: Payment of Mental Health Expert, docket # 64, is **GRANTED**. Upon defense counsel's prompt compliance with the following order, the CJA Voucher Review Unit shall pay $1,600.00 of Dr. Marc Walter's fees.

**IT IS FURTHER ORDERED** directing counsel for Defendant to promptly resubmit a CJA Form 21 on behalf of Dr. Marc Walter, attach a copy of this Order thereto, follow any other instructions necessary to complete CJA Form 21, and properly submit the form and attachments to the CJA Voucher Review Unit for review. See, 18 U.S.C. § 3006A(d)(5). Thereafter, if the CJA Voucher Review Unit finds everything in order on the CJA Form 21, the Unit shall submit the voucher with the appropriate District Court Certification for Payment in Excess of Criminal Justice Act Maxima to the undersigned Magistrate Judge for review and approval. Upon approval of the CJA Form 21, the CJA

Voucher Review Unit shall certify and send the materials, and a copy of this Order, to the Chief Judge, Ninth Court of Appeals, or his delegate, requesting approval of an additional $650.00 payment for Dr. Walter's fees.

Dated this 23rd day of November, 2009.

Lawrence O. Anderson
United States Magistrate Judge